J-S62031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.M.M., II | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.G., FATHER | : | No. 663 MDA 2016 |

Appeal from the Decree March 29, 2016
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 115 of 2016

BEFORE: GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED SEPTEMBER 09, 2016**

Appellant, A.G. ("Father"), appeals from the decree entered in the Lancaster County Court of Common Pleas, which granted the petition of the Lancaster County Children & Youth Social Service Agency ("Agency") for involuntary termination of Father's parental rights to his minor child, J.M.M., II ("Child"). We affirm.

The trial court opinion sets relevant facts and procedural history of this case are as follows:

> The [c]ourt first became involved with [J.M.M.] (Mother) and [A.G.] (Father), the parents of [Child], on August 20, 2013, when the [Agency] received information that Mother had purposely overdosed on prescription medications and was found unresponsive.[1] Father was in prison. After Mother was released from the hospital, a safety plan was established. Mother did not follow through with the plan and a Family Service Plan was put in place, but Mother also made little progress in complying with its goals. When the household's electricity was turned off because of unpaid bills, the children were placed in foster care on May 29, 2014. They were found to be dependent after [a]

hearing on June 16, 2014. Mother never completed her plan, [and] the Agency filed a petition to terminate her parental rights to her two children on January 15, 2016, and her [parental] rights were terminated by Decree on March 29, 2016. Mother did not appeal this decision.

> [1] Mother is the parent of [E.M.], who had a different father other than J.M.M. II. The parental rights of [E.M.] are not included in this appeal.

Father is incarcerated and has been so since 2010, a year after [Child's] birth, pursuant to charges for aggravated assault, robbery with infliction or threat to cause bodily injury and forcible rape. His earliest release date is 2026 [or 2027]. His only contact with [Child] is through the mail, and he writes approximately once a month or less. [Child] responds to his letters. Although Father in the past asked the Agency for updates concerning his son, he has not done so recently. The foster mother provides [Father] with pictures of [Child]. When Father was in a prior facility, he did have visits with [Child],[1] but since being in his current facility, he does not see [Child] at all; his last visit with [Child] was in 2014. He has not complied with the obligations of his Agency Plan, since the only resource the prison provides is a violence prevention program. Father testified he has a bond with [Child], but presented no evidence in support of that statement except his own belief.

[Child] has been in a pre-adoptive home since June 2, 2014, with his half-sister, E.M. He is happy there. He is receiving outpatient therapy and occupational therapy. There are two older biological children in the home who get along well with [Child] and [E.M.].

A petition for termination of Father's parental rights to [Child] was filed on January 15, 2016, and a hearing was scheduled for Monday, February 29, 2016. That hearing was continued to March 28, 2016 because of insufficient

---

[1] When father was incarcerated in Lancaster County prison, Mother brought Child to visit Father on a weekly basis. He continued to see Child on a more or less monthly basis when transferred to other prisons, until Mother lost custody of Child in 2014.

- 2 -

time to present the necessary testimony. During the truncated February 29th hearing, the [c]ourt agreed to incorporate the prior Juvenile Matter into the Orphans' [c]ourt proceeding. After [a] hearing on March 28, 2016, the [c]ourt entered a decree on March 29, 2016, terminating Mother's and Father's parental rights to [Child].

(Trial Court Opinion, filed May 17, 2016, at 1-3) (internal citations to record omitted). On April 22, 2016, Father filed a notice of appeal and concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(a)(2)(i). Mother did not file an appeal.

Father raises the following issues:

> WAS IT AN ABUSE OF DISCRETION TO GRANT THE AGENCY'S PETITION TO TERMINATE WHERE FATHER, ALTHOUGH FACING A LENGTHY SENTENCE, CORRESPONDED WITH HIS CHILD ON A MONTHLY BASIS, HAD VISITS WITH HIM ON A REGULAR BASIS UNTIL STOPPED BY THE AGENCY ONCE THE CHILD WAS IN ITS CUSTODY, ATTEMPTED TELEPHONE CONTACT WITH HIS CHILD AND RECEIVED UPDATES AND PICTURES FROM THE RESOURCE FAMILY?
>
> DID THE AGENCY MEET ITS BURDEN OF INTRODUCING SUFFICIENT EVIDENCE THAT TERMINATION OF PARENTAL RIGHTS IS IN THE CHILD'S BEST INTEREST?

(Father's Brief at 7).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

- 3 -

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972

A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*)*, appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d

1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d

1165 (2008)).

- 4 -

The Agency sought involuntary termination of Father's parental rights on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*    \*    \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*    \*    \*

(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed

from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."  ***In re Z.P., supra*** at 1117.

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal **or** failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child **or** fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his…conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted) (emphasis added). Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his…parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005).

The grounds for termination of parental rights under Section

- 7 -

2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Our Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2), holding:

> [W]e now adopt the view…that incarceration neither compels nor precludes termination. Instead, we hold that incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [Section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

\* \* \*

> In line with the expressed opinion of a majority of justices in [**In re R.I.S. & A.I.S.**, 614 Pa. 275, 36 A.3d 567 (2011)], our prior holdings regarding incapacity, and numerous Superior Court decisions, we now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). … If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to [Section] 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

**In re Adoption of S.P.**, 616 Pa. 309, 328-31, 47 A.3d 817, 828 (2012).[2]

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. **In re C.P.**, 901 A.2d 516, 520

---

[2] "Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." **In re Z.P., supra** at 1118. "[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." **In re Adoption of M.E.P.**, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). Due to our disposition under other subsections of Section 2511, we will not address the applicability of subsections (a)(5) or (a)(8).

(Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* at 520. Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his…parental rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a

- 10 -

> financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [his] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

"While a parent's emotional bond with his…child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 104 (Pa.Super. 2011). "The mere existence of an emotional bond does not preclude the termination of parental rights." *Id.* Rather, the court "must examine the status of the

bond to determine whether its termination would destroy an existing, necessary and beneficial relationship." *Id.* (internal citations and quotation marks omitted). "Above all else[,] adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P., supra* at 1121.

Importantly, "this Court has recognized a connection between the involuntary termination of parental rights and the Adoption and Safe Families Act ("ASFA")…" *In re R.M.G.*, 997 A.2d 339, 349 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 372 (2010). The stated policy of the ASFA is:

> [T]o remove children from foster placement limbo where they know neither a committed parent nor can [they] look toward some semblance of a normal family life that is legally and emotionally equivalent to a natural family…. States such as Pennsylvania, which participate in the program, are required to return the child to its home following foster placement, but failing to accomplish this due to the failure of the parent to benefit by such reasonable efforts, to move toward termination of parental rights and placement of the child through adoption. Foster home drift, one of the major failures of the child welfare system, was addressed by the federal government by a commitment to permanency planning, and mandated by the law of Pennsylvania in its participation in the Adoption and Safe Families Act of 1997. Succinctly, this means that when a child is placed in foster care, after reasonable efforts have been made to reestablish the biological relationship, the needs and welfare of the child require [the Agency] and foster care institutions to work toward termination of parental rights, placing

> the child with adoptive parents. **It is contemplated this process realistically should be completed within 18 months.**
>
> Essentially, this legislation shifted away from an inappropriate focus on protecting the rights of parents to the priority of the safety, permanency and well-being of the child. While this 18-month time frame may in some circumstances seem short, it is based on the policy that a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*Id.* (internal citations and quotation marks omitted) (emphasis in original).

Instantly, in response to Father's claims, the Orphans' court first translated Father's issue as: "Whether the parental rights of a father should be terminated when the parent was imprisoned in 2010 for violent crimes when his son was one year old, when he will be in prison until at least 2026, when he has seen his son since 2010 only at prison visits which ended in 2014, but has taken no official action to reactivate those visits, when he writes to his son less than once a month, and when he will need extensive work on his reunification plan upon release[?]" (*See* Trial Court Opinion at 3.) Further, the court reasoned:

> The record shows that Father has written to [Child] less than once a month. Fewer than 12 letters a year is just not enough to show Father's sincere desire to form a bond. And it is certainly an insufficient reason to deprive [Child] of the security of the close and present love and care of his foster parents. When his visits with [Child] were stopped, Father complained to the Agency but did not formally ask the [c]ourt to intervene. Father has not taken sufficient action to remedy the conditions which rendered [Child] a dependent child.

The [c]ourt finds that the Agency has met its burden to terminate Father's parental rights under the standards set out in Sections 2511(a)(1), (2)…. Father has been in prison since [Child] was one year old. [Father] has not taken sufficient action to maintain a parental role with his child. He has not completed any aspect of his reunification plan. At his father's release date, [Child] will be almost 18. Even if his rights had not been terminated, Father would be a parent in name only, since he is not in a position to adopt a personal parental role with his son. The [c]ourt realizes that Father has no choice in this matter since he will be in jail until 2026, but his lack of choice does not grant him a reprieve from a termination. His reality is that he is not now and will not in the near future be in a position to care for [Child].

\* \* \*

The [c]ourt not only disagrees with, but is mystified by, Father's position in favor of maintaining his parental rights. In what way is seven-year-old [Child's] best interest served by being turned into a foster child with no hope of meaningful contact whatsoever with his biological parent for a period of sixteen years? Do fewer than twelve letters a year successfully substitute for [regular displays of love and affection]? Of course not. But that is what Father wants for [Child]. Father wants to retain his status as a parent while leaving [Child] essentially parentless.

Father asserts that despite the separation, he has a meaningful bond with [Child], but the [c]ourt does not accept that assertion as true. Father had some visits with [Child] at his previous prison setting, but those visits ended in 2014, when [Child] was five, and Father did not fight for their resumption. At [seven] years of age, [Child] certainly knows Father, but recognition does not equal an emotional bond. As the Superior Court has said:

> … Being Uncle Daddy is not enough. Being a parent means assuming responsibility so that a real bond develops, not just a casual relationship.

The Superior Court has also eloquently commented on the type of situation in which a parent fights to maintain

- 14 -

his…rights, thereby condemning the child to the limbo of unending foster care.  …

> What [the parent] attempts to preserve is [his] sense of worth by holding onto the illusion of [fatherhood].  In doing so, [he] would deny [his child], in name only, the right to be totally assimilated into the only family [the child] has known.  The price [the child] would pay is too high to satisfy [the parent's need].  Sometimes the greatest act of love a parent can express is to let the child go.  …

> And such is the case for [Child].  Because of the length of Father's sentence and his inability to maintain a parental bond with [Child] it is impossible for [Father] to provide [Child] with the love, security and stability that [Child] deserves in his life.

(**Id.** at 5-7).  The record supports the court's termination decision under Section 2511(a)(1), (a)(2) and (b), based on parental incapacity and the best interests of Child.  **See In re Z.P., supra**.  Therefore, we have no need to disturb it.  Based upon the foregoing, we affirm the decree terminating Father's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016